# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | | |
|---|---|---|---|
| **AMY SILVERMAN,** | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | **No.** | **08 C 2220** |
| | ) | **Judge Blanche M. Manning** | |
| | ) | | |
| **BOARD OF EDUCATION OF** | ) | | |
| **THE CITY OF CHICAGO, and** | ) | | |
| **DR. KARVELAS, in her individual** | ) | | |
| **capacity,** | ) | | |
| **Defendants.** | ) | | |

## MEMORANDUM AND ORDER

Amy Silverman alleges that the Board of Education of the City of Chicago and principal Bessie Karvelas, in her individual capacity, discriminated against her on the basis of her pregnancy and retaliated against her when she complained. Silverman also alleges claims under the Family Medical Leave Act, 29 U.S.C. § 2901 *et seq*., and tortious interference with contract against Karvelas only. Silverman voluntarily dismissed her religious discrimination claim. Both defendants have moved for summary judgment as to all claims against them. For the reasons stated herein, the motions are granted.

## I.    Miscellaneous Issues

The court's resolution of this motion was made vastly more difficult for several reasons. First, the plaintiff's additional statements of material facts do not comply with Local Rule 56.1(b)(3)(C), which requires *short* numbered paragraphs. Each of the plaintiff's additional statement of facts is lengthy. For instance, her additional statement of fact number 23 is 18 sentences long and not every one of those 18 sentences includes a citation to the record. The

local rules contain a limit on the number of statements of fact for a reason. As noted in the

Committee Comment for Local Rule 56.1:

> Local Rule 56.1 is revised to set forth limits on the number of statements of fact that may be offered in connection with a summary judgment motion. The judges of this Court have observed that parties frequently include in their LR56.1 statements of facts *that are unnecessary to the motion* and/or are disputed. The judges' observation is that in the vast majority of cases, a limit of 80 asserted statements of fact and 40 assertions of additional statements of fact will be more than sufficient to determine whether the case is appropriate for summary judgment. *The number of statements of fact has been set in light of the requirement of section (a) (3), which requires that only "material facts" be set down.* A party may seek leave to file more asserted statements of fact or additional fact, upon a showing that the complexity of the case requires a relaxation of the 80 or 40 statement limit.

Local Rule 56.1 (emphasis added).

Silverman has included numerous facts that are not material to the resolution of the instant motions or are not properly supported by citations to the record. As a result of the plaintiff's failure to abide by the local rules, the court will provide only a brief overview of the facts and discuss additional specific facts as necessary in its analysis of the relevant issues. Any future failure to abide by the local rules will lead to the offending statements of fact being stricken.

Second, the court notes that both parties incorporate by reference sections of the summary judgment briefs that they filed with respect to the other defendant. Again, the local rules contain page limits on motions, which may only be exceeded upon prior approval by the court. Skirting these limits through "incorporation by reference" is impermissible. The court has resolved such incorporations as necessary throughout the body of the order.

Finally, the court notes that the plaintiff did not provide exhibits with protruding tabs, an index of the attached exhibits or even a cover page identifying the attached exhibits as the plaintiff's. The court acknowledges that these particular failures are not necessarily in contradiction to the local rules or this court's standing order. Nevertheless, the issues could have been easily rectified by the plaintiff but have added significantly to the time and effort required by this court in addressing the motions. The court raises all of these issues with the expectation that they will not occur again.

Before proceeding to the merits of the defendants' motions, the court denies the plaintiff's motion for leave to file a sur-reply. The plaintiff asserts that the defendants raised for the first time in their reply brief the argument that the plaintiff did not prove a *prima facie* case of pregnancy discrimination. The court agrees with the plaintiff, however, that the defendants conceded this fact in their opening brief and therefore a response to any argument regarding the plaintiff's *prima facie* case of pregnancy discrimination is unnecessary.

## II.   Facts

Silverman has been employed by the Board since August 2000. During the 2004-2005 and 2005-06 school years, she was a probationary assigned teacher ("PAT") at Lincoln Park High School ("LPHS"). At that time, she held a teaching certificate that qualified her to teach any child with a disability from the kindergarten level to age 21, including children with autism, but excluding deaf, blind or speech/language-impaired children. Karvelas is employed by the Board and is currently and at all relevant times was the principal of LPHS.

Illinois law provides that appointed teachers hired after January 1, 1998, must satisfactorily complete a probationary period of four years after which the teacher becomes

tenured.  PATs are employed on an annual basis and each year a principal and the Board must decide whether to renew a PAT for the following school year.  If the decision is made to "non-renew" a PAT, a procedure must be followed and all non-renewed PATs must be notified of the non-renewal at least 30 days prior to the end of the school year.  When a PAT is non-renewed, a reason for the non-renewal of the teacher's employment does not have to be provided unless the PAT is in her last year of service.

During the 2004-05 school year, Silverman co-taught students with disabilities in the general education classrooms.  As a co-teacher in the general education classrooms, Silverman was required to teach students with disabilities along with the general education teacher.  As part of the budget-planning process for the 2005-06 school year, Karvelas learned from the Board that 1.2 special education positions would be cut from LPHS.  On March 29, 2005, Karvelas identified Silverman to the Board as the least effective special education PAT and recommended her for non-renewal.

While the parties dispute when Karvelas learned of Silverman's pregnancy, Silverman contends that she told Karvelas that she was pregnant in "early" March 2005 and Karvelas concedes for purposes of this motion (although otherwise denies) that she knew that Silverman was pregnant when she recommended her for non-renewal.  On May 9, 2005, Arne Duncan, then the Chief Executive Officer of the Chicago Public Schools, submitted to the Board a written recommendation for the dismissal of 1,099 PATs.  This list included Silverman.  On May 25, 2005, the Board adopted Duncan's recommendation to non-renew 1,099 PATs including Silverman.

On May 13, 2005, Karvelas met with Silverman and informed her that her employment was not going to be renewed for the 2005-06 school year. During this meeting, Karvelas explained to Silverman that if LPHS were to get funding for a new special education position for the 2005-06 school year, Karvelas would offer Silverman the position. Indeed, during the summer of 2005, the Office of Specialized Services opened and funded a new special education class for students with autism at LPHS. Karvelas interviewed several individuals for the position, but was informed by the CPS Law Division that she was required to recommend Silverman because Karvelas had offered the position to her first. Karvelas offered Silverman the position on July 28, 2005. Silverman expressed "enthusias[m]" about the "exciting new opportunity," which she believed would allow her to "expand [her] successful work with students with autism" and accepted the position on August 11, 2005. Silverman gave birth on September 1, 2005, and began teaching in the new position when she returned to LPHS in November 2005 after having taken maternity leave.

Silverman filed a charge of discrimination with the EEOC on or about May 31, 2005, which she apparently amended on July 28, 2005 (although the court could not locate the amended charge in the record). Silverman filed a second charge on October 13, 2006, to include charges of retaliation.[1]

During the 2005-06 school year, Silverman was in her final year as a PAT. According to the Board, one of the Board's psychologists at the relevant time, Dr. Sylvia Love, observed

---

[1]While the plaintiff states that she amended her charge on October 13, 2006, *see* Plaintiff's Statement of Addition Facts at ¶19, the October 13, 2006, charge in the record appears to be a new charge with a new number of 440-2007-00363. *See* Plaintiff's Exh. F, P0009. Indeed, the July 31, 2007, Determination Letter from the EEOC refers to "Charge Number 210-2005-05452 Amended, and 440-2007-00363." *See id.* at P0005.

Silverman's autism class numerous times during the course of the year. Silverman disputes this and denies ever having seen Love in her classroom during the 2005-06 school year. As a result of her observations, Dr. Love developed concerns that Silverman's instruction and classroom management were deficient. Again, Silverman denies that Love ever observed her and denies that her classroom management was deficient.

Love attests that she shared her concerns with Karvelas early in the second semester of the 2005-06 school year. Silverman denies this. According to the Board, Karvelas observed Silverman's class in Spring 2006 and saw the deficiencies described by Love. Karvelas concluded that Silverman had poor teaching methods, provided a minimal level of instruction and did not have any lesson plans. Silverman denies that her performance was deficient.

Based on her own observations as well as those by Love and an assistant principal at LPHS, Karvelas chose not to renew Silverman for the following school year, 2006-07. Karvelas notified Silverman of her non-renewal on or about April 26, 2006. Karvelas recommended that Jon Goldstein, who had been a special education teacher at LPHS, be placed in Silverman's classroom the following year. Karvelas had rated Goldstein "superior" for the 2005-06 school year. By August 2006, Silverman had obtained another teaching position at Smyth Elementary School, a Chicago Public School, making more money than she had at LPHS. Each year since, Silverman has continued to receive a higher salary and the Board still employs her. Silverman suffered no break in service from the Board at any time and never lost medical or other benefits. She achieved tenure on August 2006.

**III.    Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). The court construes all of the facts and the reasonable inferences drawn from those facts in favor of the nonmovant. *See Warren v. Solo Cup Co.,* 516 F.3d 627, 629 (7th Cir. 2008). The nonmovant, however, may not merely rest upon the allegations or details in their pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**IV.    Analysis**

    A.    <u>Board of Education</u>

        1.    *Title VII Sex Discrimination Based on Pregnancy* (Count I)

Silverman first alleges that the Board discriminated against her based on her sex and specifically her pregnancy. *See* Civil Rights Act of 1964 § 701, 42 U.S.C. § 2000e(k) (defining "on the basis of sex" to include "on the basis of pregnancy, childbirth, or related medical conditions"). Silverman may prove her pregnancy discrimination claim under either the direct or indirect methods of proof. *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007)(citation omitted). To establish discrimination under the indirect method, the plaintiff must first demonstrate a *prima facie* case of discrimination. A *prima facie* case of sex discrimination consists of evidence that (1) the plaintiff belongs to a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside of the class more favorably. *See Peirick v. Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). If Silverman succeeds in

establishing a prima facie case of discrimination, the burden then shifts to the Board to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Peirick*, 510 F.3d at 687. If the Board does so, then Silverman must establish that the employer's legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id*.

The Board concedes that Silverman has established a *prima facie* case of pregnancy discrimination under the indirect method. It argues, however, that it had a legitimate, nondiscriminatory reason for firing her. Specifically, the Board asserts that it had to cut one special education position at Lincoln Park High School due to budgetary constraints, and that the principal, Karvelas, recommended to the Board that Silverman be cut because she was the "least effective" probationary assigned teacher. According to the Board, "Karvelas determined that the other six PATs were stronger teachers because they had stronger classroom management skills, were more engaged with the students, turned in lesson plans and that those who were co-teachers worked well with their general education teachers." Board's Memorandum at 10, Dkt. 130.

Silverman responds that the Board's proffered reasons for selecting her for non-renewal are false and pretextual.[2] Pretext is "a dishonest explanation, a lie rather than an oddity or an error." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (internal quotation marks and citation omitted). To show pretext, a plaintiff must identify evidence that her

---

[2]The court rejects the Board's assertion that this court's September 16, 2009, ruling, Dkt. #106, on a discovery issue held as a matter of law that the budgetary cut reason for non-renewing Silverman was not pretextual. As an initial matter, the court was ruling on a limited discovery issue and was not considering the merits of the plaintiff's claims. Moreover, as Silverman notes, she contends that Karvelas' assertion that Silverman was the least effective PAT was pretextual. Silverman does not challenge the Board's position that one position had to be eliminated due to budget cuts.

employer's explanation for the adverse employment action is "unworthy of credence." *Id*. (internal quotation marks and citation omitted).

Silverman challenges each of the reasons that Karvelas found her to be the least effective PAT and disputes the observations made by Karvelas with respect to her students' classroom behavior, Silverman's lesson plan preparation and her coordination with general education teachers. However, the Seventh Circuit has "frequently . . . stated that '[t]he fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual.'" *Poer v. Astrue*, --- F.3d ----, 2010 WL 2104256, at *8 (7th Cir. May 27, 2010)(*quoting Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir.1997)). *See also Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006)("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.")(citation omitted); *Vitug v. Multistate Tax Com'n*, 88 F.3d 506, 516 (7th Cir. 1996)(noting that the "court . . . cannot sit in review of an employer's appraisal of applicants' qualifications unless the plaintiff puts forth some tangible evidence to show that the employer's decisions were motivated by improper factors"). Silverman's denial of the factual basis for Karvelas' decision does not demonstrate that the Board did not renew her because she was pregnant.

Silverman also contends that the fact that she was rehired by the Board just a few months after she was non-renewed to teach severely autistic students at LPHS starting in the fall of 2005 shows that Karvelas' and the Board's allegations of poor performance are pretextual. The court disagrees. Simply because Karvelas determined that Silverman was the least effective PAT at the time that Karvelas was required to cut one special education position in March 2005 does not

indicate that Silverman was not qualified for a different teaching position for the following school year. Because Silverman has failed to point to any evidence that the Board's reason for non-renewing her was pretextual, Silverman fails to succeed under the indirect method.

In her response brief, however, Silverman also contends that she survives the summary judgment motion under the direct method. As noted by the Seventh Circuit:

> A plaintiff can prevail under the direct method by showing an admission of discrimination or by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. If the plaintiff's evidence is thereafter contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.

*Ridings v. Riverside Medical Center*, 537 F.3d 755, 771 (7th Cir. 2008) (internal citations and quotations omitted). "The focus of the direct method of proof . . . is not whether the evidence offered is itself 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, --- F.3d ----, 2010 WL 1838804 (7th Cir. May 10, 2010)(citation omitted).

The Board contends that Silverman cannot succeed under the direct method because she cannot point to any direct admission nor any circumstantial evidence in support of her allegation of pregnancy discrimination. Silverman does not point to any direct admission of discrimination, so the court assumes that she is attempting to prove her claim using circumstantial evidence. The Seventh Circuit has opined on the different variations of circumstantial evidence:

> There are three categories of circumstantial evidence under the direct approach, each of which may suffice by itself to establish discrimination, or may be used in conjunction with one or both of the other categories. The first category consists of "suspicious timing, ambiguous statements oral or written, behavior toward or

comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." The second type requires a showing that the employer systematically treated other, similarly situated, non-pregnant employees better. The third type is evidence that the plaintiff was qualified for the position in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for its decision is "unworthy of belief, a mere pretext for discrimination." The latter category "is substantially the same as the evidence required" under the indirect method.

*Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 601 (7th Cir. 2003)(internal citations omitted).

Silverman first notes that the EEOC issued a determination finding that the evidence it found during its investigation established cause to believe that the defendants had discriminated against Silverman based on pregnancy and had retaliated against Silverman by reinstating her to a more difficult position and by failing to renew her position for the following school year. In a footnote and without citation to authority, the Board contends that such evidence "is not admissible" and "cannot be considered direct evidence." Board's Reply in Support of Summary Judgment at 5, n.2. The plaintiff, however, is not referring to the EEOC's determination as direct evidence; she is (presumably) using it to support her "mosaic of circumstantial evidence" under the direct *method*.

In any event, the court notes that at least one other court in this district has refused to admit EEOC determinations on summary judgment. *Germano v. International Profit Ass'n., Inc.*, 06 CV 5638, 2007 WL 3243857, at *3 n.7 (N.D. Ill. Nov. 1, 2007), *rev'd on other grounds*, 544 F.3d 798 (7th Cir. 2008)("[T]he Court will not treat the EEOC Determination as admissible evidence for the purpose of deciding Defendants' summary judgment motions.")(citations omitted). While the Seventh Circuit has concluded that EEOC determination letters may be

admissible, *Young v. James Green Management, Inc.*, 327 F.3d 616, 624 (7th Cir. 2003)("As a general proposition, administrative findings regarding claims of discrimination may be admitted under Rule 803(8)(C)")(citation omitted)), it is still left to the judge's discretion "as to whether such material ought to be admitted." *Id.* Here, the court concludes that it will not consider the EEOC's determination in the context of the instant motion on the simple ground that it is not relevant. This court presumably has the same evidence before it that the EEOC had. It is this court's job to review the evidence in light of the guiding legal principles to ascertain whether the plaintiff's discrimination claim survives summary judgment. The EEOC's determination based on its investigation of the facts has no bearing on the court's determination, and thus, the court will not consider it.

Silverman next contends that Karvelas' shifting reasons for recommending her for non-renewal are also circumstantial evidence of discrimination. Specifically, Silverman contends that while Karvelas and the Board initially stated that Silverman was non-renewed due to budget constraints, the Board "now claims that Plaintiff's performance was grossly deficient." As an initial matter, the court notes that the Board characterized Silverman as the "least effective" of the special education PATs, not "grossly deficient." Moreover, the purported contradiction in the reasons for Silverman's non-renewal is simply non-existent. The fact that the Board, in its response to the EEOC charge, attributed Silverman's non-renewal to "budget constraints" and "not unsatisfactory work performance" is reconcilable with its current position that Karvelas had to choose "the least effective" PAT to non-renew. In other words, the Board's position is not that she was bad but that she was the worst of a good lot, thus making the decision as to who would be selected for non-renewal a "difficult one" as the Board indicated in its EEOC response.

The plaintiff's basic contention here is that she was qualified for the position and was non-renewed simply because she was pregnant. As noted above, in the context of a circumstantial evidence case, such a position also requires a showing that the employer's stated reason for the adverse action was pretextual. *Venturelli,* 350 F.3d at 601 ("The third type is evidence that the plaintiff was qualified for the position in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for its decision is 'unworthy of belief, a mere pretext for discrimination.'"). However, as the court has already concluded, the plaintiff has failed to demonstrate that the Board's conclusion that she was the "least effective" PAT was pretextual.

Silverman also points to suspicious timing. According to the plaintiff, she announced her pregnancy on March 8, 2005, and again March 16, 2005,[3] and less than a month later, on March 29, 2005, Karvelas submitted her name to the Board for non-renewal. However, while "[s]uspicious timing is a type of circumstantial evidence under the direct method," *Buie v. Quad/Graphics, Inc*., 366 F.3d 496, 506 (7th Cir. 2004), it alone "'rarely is sufficient to create a triable issue'" because "'mere temporal proximity is not enough to establish a genuine issue of material fact.'" *Cole v. State of Ill*., 562 F.3d 812, 816 (7th Cir. 2009) (*quoting Andonissamy v.*

---

[3]As noted earlier, the parties go on at length about the plaintiff's differing recollections on exactly what date she told Karvelas of her pregnancy. Karvelas contends that she did not know that Silverman was pregnant when she submitted her name for non-renewal but asserts that, for purposes of this motion, she will agree that she knew of the pregnancy at the relevant time. While Silverman has testified to several dates on which she purportedly informed Karvelas, she now contends in an affidavit filed with her summary judgment motion that she told Karvelas in "early March 2005" that she was pregnant. Assuming that is correct, Karvelas, according to the record, *see* Defendants' Exh. U, recommended her for renewal both on March 17 and March 28, 2005, *after* learning that Silverman was pregnant. While not fatal, this undermines the plaintiff's position that she was non-renewed because she was pregnant.

*Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)).  In the instant case, Silverman has

pointed to no other relevant circumstantial evidence that she was non-renewed because she was

pregnant, and the temporal proximity alone is insufficient to survive summary judgment.

Accordingly, the Board's motion for summary judgment on the plaintiff's Title VII sex

discrimination claim is granted.

2.      *Title VII Retaliation* (Count III)

In addition to pregnancy discrimination, Silverman alleges that the Board retaliated

against her for filing a grievance and the EEOC charge in spring 2005 by rehiring her for the fall

of 2005 and assigning her to a more difficult position.  She also alleges that the Board further

retaliated by failing to give her the opportunity to remediate supposed defects in her performance

and failing to renew for contract after the 2005-2006 school year.

As with the sex discrimination claim, Silverman may attempt to survive summary

judgment with respect to her retaliation claim under either the direct or indirect methods.  *See*

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007)(citations omitted).  Under the

direct method, Silverman must present evidence of:  (1) a statutorily protected activity; (2) a

materially adverse action taken by the employer; and (3) a causal connection between the two.

*Id.* (citations omitted).  Under the indirect method, Silverman must show that (1) she engaged in

statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered

an adverse employment action; and (4) she was treated less favorably than similarly situated

employees who did not engage in statutorily protected activity.  *Cracco v. Vitran Exp., Inc.*,

559 F.3d 625, 634-35 (7th Cir. 2009)(citation omitted).  Once a plaintiff establishes the *prima*

*facie* case under the indirect method, the defendant must articulate a nondiscriminatory reason for

its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

It is not clear if Silverman is attempting to proceed under both the direct and indirect methods or only the latter. In what appears to be her argument under the direct method, Silverman, after quoting from some uncited authority that "[r]etaliation is established where 'a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination,'" states only that "Plaintiff's evidence meets this standard, requiring a trial by jury." Response at 11, Dkt. #134. Not only is this quotation an incomplete recitation of the direct method for establishing retaliation, Silverman's argument ("Plaintiff's evidence meets this standard, requiring a trial by jury") is clearly insufficient and the court will not consider it. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[s]keletal and unsupported arguments will not be considered and the argument will be deemed waived.")

As to the indirect method, the Board asserts that Silverman cannot show that she met the LPHS's legitimate expectations or that she was treated less favorably than a similarly situated employee who did not complain of discrimination. The court agrees that Silverman has failed to demonstrate that she was treated less favorably than a similarly situated employee who did not complain of discrimination. Silverman contends that Jon Goldstein, a male special education PAT who took over Silverman's autism unit during the 2006-2007 school year after Silverman was non-renewed for the second time, is a similarly-situated employee who was treated more favorably. "Although the 'similarly situated' concept is a flexible one . . . the comparators must be similar enough that differences in their treatment cannot be explained by other variables, such

as distinctions in their roles or performance histories." *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009)(citations omitted). Silverman, however, fails to make such a showing. While it is undisputed that Goldstein taught the same class with the same students and had the same supervisor, Silverman acknowledges in her response brief that she and Goldstein had different qualifications. Response at 16 ("The only distinctions between Plaintiff and Goldstein are their qualifications, gender and pregnancy.")(citing PSOF ¶ 37).[4] Moreover, Silverman fails to articulate whether Goldstein was retained or non-renewed or whether he had engaged in any statutorily protected speech. Because Silverman fails to point to any similarly situated employees who were treated more favorably, her *prima facie* case fails.

Even assuming *arguendo* that Silverman has succeeded in proving her *prima facie* case under the indirect method, she has failed to demonstrate that the Board's reasons for non-renewing her after the 2005-2006 school year were pretextual. As noted above, "[t]o show pretext, a plaintiff needs to present some evidence that the purported basis for the adverse action was a dishonest explanation." *Adams v. City of Chicago*, --- F.Supp.2d ----, 2010 WL 1325690, at *16 (N.D. Ill. Mar. 30, 2010) (citing *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (pretext "means a dishonest explanation, a lie rather than an oddity or an error") (internal quotes omitted); *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (plaintiff must show that the employer "lied about its reasons for firing him-not that [the employer] was wrong for firing him for the reasons it gave"); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (so long as the employer "honestly believes the reason it

---

[4]The court cannot tell what those differences are given that Silverman fails to detail the differences nor are they described in the cited statement of fact.

offers," the court will not sit as a "superpersonnel department")).  While Silverman asserts that her performance during the 2005-2006  "exceeded" the Board's expectations, she has failed to point to any evidence which supports the conclusion that the Board, through Karvelas, was lying when it decided to non-renew her in the spring of 2006 based on deficient performance.

Because Silverman has failed to establish a *prima facie* case of retaliation under either the direct or indirect methods, the court grants the Board's motion for summary judgment as to this claim.

3.      § *1983 Equal Protection* (Count IV)

The Board asserted in its opening motion that Silverman has failed to establish that it violated § 1983 in non-renewing her.  Instead of setting forth an argument in her response brief to the Board's motion for summary judgment, Silverman inexplicably responds to the Board's motion regarding its § 1983 liability in her response brief to Karvelas's motion for summary judgment.  Once again, not only has this misplacement subverted the page limits under the Local Rules, but as a practical matter, it makes the court's task that much more difficult by failing to place arguments in the proper briefs.  That being said, the court proceeds to the merits of the § 1983 claim.

As a municipal entity, the Board of Education of the City of Chicago cannot be held liable for the conduct of its employees under § 1983 under the theory of *respondeat superior*. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007)(citations omitted).  "A plaintiff

may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id*. at 515 (citation omitted). Silverman relies upon the third method of establishing municipal liability–that the injury was caused by a person with final policymaking authority, namely Karvelas.

The Board challenges Silverman's contention that Karvelas had final policymaking authority. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The Seventh Circuit has stated that "[n]othing in the [Illinois] School Code allows us to infer that a superintendent or principal has been delegated policymaking authority with respect to personnel decisions." *Duda v. Board of Ed. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). Contrary to this conclusion, Silverman conclusorily argues that the Board has delegated final policymaking authority to Karvelas because "[a]s the principal of Lincoln Park, Karvelas was given authority over the terms and conditions of Silverman's employment." Response to Karvelas' Motion for Summary Judgment at 9, Dkt. #135.

Silverman, however, points to no evidence in support. Indeed, Silverman's contention is belied by Illinois law, which expressly states that the principal shall only submit recommendations regarding appointment, retention, or promotion to the superintendent. *See* 105 ILCS 5/10-21.4a ("The principal shall submit recommendations to the superintendent concerning the appointment, retention, promotion and assignment of all personnel assigned to the attendance center."). Moreover, the School Code specifically states that "[t]he right to employ, discharge,

and layoff shall be vested solely with the board. . . . ."  105 ILCS 5/34-8.1.  Because Silverman has failed to establish a genuine issue of material fact regarding whether Karvelas had final policymaking authority, the Board's motion for summary judgment is granted as to Silverman's § 1983 claim.

        B.    <u>Karvelas</u>

        1.    *Retaliation* (Count III)

Karvelas also seeks judgment on the retaliation claim.  Silverman already conceded that the Title VII retaliation claim against Karvelas should be dismissed.  *See* Dkt. #28, Order of Sept. 17, 2008.  Moreover, Silverman cannot assert a § 1983 retaliation claim because the "right to be free from retaliation for protesting . . . sex discrimination is a right created by Title VII, not the equal protection clause."  *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989).  Accordingly, Karvelas' motion for summary judgment on the retaliation claim is granted.

        2.    *§ 1983* (Count IV)

The plaintiff also alleges that Karvelas deprived her of her right to equal protection under § 1983 by discriminating against her based on her pregnancy.  Under § 1983, state government employees can sue their employer for violations of their rights under "the Constitution and laws."  42 U.S.C. § 1983.  Claims of discrimination under § 1983 may be brought in addition to any claims an employee has under Title VII or the ADA.  *See Trigg v. Fort Wayne Community Schs.*, 766 F.2d 299, 302 (7th Cir. 1985).  A plaintiff survives summary judgment on a claim under § 1983 in the same way that she survives summary judgment on claims under Title VII.  *See, e.g., Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1037-38 (7th Cir. 2003) ("[T]he same

standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.")
(internal quotation marks and citation omitted).

In addition, to establish an individual-capacity claim under § 1983 against Karvelas,
"there must be a showing that the official was directly responsible for the improper conduct, and
knowingly, willfully, or at least recklessly caused the alleged deprivation by [his or her] action or
failure to act." *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 566 (7th Cir.
2000). As noted above with respect to the § 1983 claim, Silverman may proceed on her § 1983
claim against Karvelas under either the direct or indirect methods.

In an apparent attempt to identify circumstantial evidence of discrimination under the
direct method, Silverman first refers to Karvelas' purported equivocation as to whether she knew
of Silverman's pregnancy at the time Silverman was non-renewed. Specifically, Silverman notes
that in the Board's response to Silverman's original EEOC charge, the Board stated that "Dr.
Karvelas admits that [Silverman] informed her in or around March 2005, that she was pregnant
and would be requesting a maternity leave." P000121. Moreover, in response to Silverman's
amended EEOC charge, the Board admitted that in March 2005, Silverman informed Dr.
Karvelas that she would be taking maternity leave. However, in her discovery responses and
deposition in the instant case, Karvelas stated that she learned of Silverman's pregnancy late in
the 2004-2005 school year when the "weather was warm." *See* Dkt. #67. In addition, in her
answer to the complaint, Karvelas denied that Silverman had told Karvelas on March 16, 2005,
the she was pregnant and also denied that Karvelas non-renewed Silverman two weeks after she
told Karvelas that she was pregnant. Finally, in her brief, Karvelas reiterates that she did not
know that Silverman was pregnant when she submitted Silverman's name to the Board for non-

renewal on March 29, 2005.  Thus, Silverman argues that defendants' contradictory answers as to whether Karvelas knew of Silverman's pregnancy at the time she recommended Silverman for non-renewal constitutes circumstantial evidence of discrimination.

However, Silverman overlooks that Karvelas was not named as an individual respondent in Silverman's EEOC charges.  While the Board may have answered that Karvelas knew of the pregnancy at the time she recommended Silverman for non-renewal, Silverman fails to point to any authority suggesting that Karvelas is legally bound in the instant action by the answers given by the Board in response to Silverman's EEOC charges such that now she can be deemed to have equivocated as to her response to this question.  Accordingly, Silverman's assertion of equivocation fails.

In addition to the assertion that Karvelas' purported changing answer is circumstantial evidence of discrimination, Silverman also incorporates by reference all of the arguments she made in response to the Board's motion for summary judgment.  In so doing, Silverman has granted herself additional pages beyond the limit provided in the local rules without first asking the court's approval.  This is inappropriate so the court may, in its discretion, disregard the incorporation of arguments Silverman makes in another document.  Even allowing the incorporation by reference, however, does not assist Silverman as the court has already rejected the arguments in support of the direct (and indirect) methods that Silverman made with respect to the Board's motion regarding Silverman's pregnancy discrimination claim, as discussed above.

With respect to pretext, Silverman asserts that Karvelas's reason for not renewing her–that she was the least effective PAT–is not credible because she stated in her EEOC position statement that "all of the special education PATS were perceived as excellent teachers" and

Karvelas admitted that she did not evaluate teachers in the 2004-2005 school year, her first year as principal of LPHS. As an initial matter and as noted above, the position statement was by the EEOC, not Karvelas individually. In addition, and again as already discussed, simply because Silverman was non-renewed on the ground that she was the "least effective PAT" is not irreconcilable with the Board's statement that all of the PATs were perceived as excellent teachers.

Silverman also contends that the observations performed by Karvelas in the 2005-2006 school year were "surprise" visits that "disregarded evaluation protocol," which required a pre-conference in which the teacher and evaluator agree on and discuss the lesson to be learned. But Silverman fails to support this argument regarding evaluation protocol with any citation to the record. Moreover, it appears that this argument is actually one in support of a claim for retaliation. However, as discussed above, Silverman cannot assert a § 1983 retaliation claim. Accordingly, Karvelas' motion for summary judgment on Silverman's § 1983 claim against her is granted.[5]

3.      *FMLA* (Count V)

Silverman alleges that Karvelas violated her rights under the FMLA, which allows up to 12 weeks of unpaid leave for the birth of a son or daughter. 29 U.S.C. §§ 2612, 2615. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). "A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or

_____

[5]Because the court has granted Karvelas' motion for summary judgment, it need not address Karvelas' argument that Silverman has failed to demonstrate a property interest in continued employment.

interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp*., 426 F.3d 880, 884 (7ᵗʰ Cir. 2005)(citation omitted).[6]

According to Silverman, Karvelas interfered with her FMLA rights by non-renewing her after she requested FMLA leave. To prevail on her interference claim, Silverman must show that: (1) she was eligible for FMLA protection; (2) the defendant was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) the defendant denied her benefits to which she was entitled. *Ryl-Kuchar v. Care Centers, Inc*., 565 F.3d 1027, 1030 (7ᵗʰ Cir. 2009)(citation omitted). Silverman, however, fails to point to any benefits she was denied. Indeed, it is undisputed that Silverman took maternity (FMLA) leave after the birth of her child in September 2005 and returned to LPHS in November 2005. Because Silverman has not identified any benefits which she was entitled to but denied, her FMLA interference claim fails.

Silverman also alleges that she was retaliated against for taking FMLA leave. Karvelas contends that Silverman has not pointed to any evidence showing that Karvelas took adverse action against Silverman because she took a valid leave. Silverman's brief response conclusorily states that "Silverman survives this motion for summary judgment on the evidence, which shows retaliation for taking leave protected under the FMLA." Plaintiff's Response in Opposition to Karvelas' Summary Judgment Motion at 16. She then "incorporates by reference" her argument

---

[6]The Board also raises an argument as to whether Karvelas is an "employer" under the FMLA. However, because Silverman's FMLA claim fails for the other reasons discussed herein, the court need not address this issue.

with respect to the Title VII claim.  For the same reasons discussed with respect to the Title VII retaliation claim, Silverman fails to establish a genuine issue of material fact that she was retaliated against for having taken FMLA leave.  The court grants Karvelas' and the Board's[7] motion for summary judgment on the FMLA interference/retaliation claim.

       4.     *Tortious Interference with Contract* (Count VI)

Silverman alleges that Kavelas purposely interfered with her employment contract with the Board.  "In a claim for tortious interference with a contractual relationship, plaintiff must establish: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party, caused by the defendant's conduct; and (5) damages."  *Dopkeen v. Whitaker*, --- N.E.2d ----, 2010 WL 891328, at *2 (Ill. App. Ct. 2010)(citation and internal quotation marks omitted).

Karvelas contends, among other things, that as a probationary teacher, Silverman was non-tenured and employed on an annual basis; thus, she did not have an employment contract and was an at-will employee.  Silverman, however, wholly fails to address this assertion.  Because Silverman has failed to establish the existence of a valid and enforceable employment contract (or, for that matter, a breach of that purported contract by the third party), Karvelas' motion for summary judgment on the tortious interference claim is granted.

---

[7]The Board adopted Karvelas' arguments in support of summary judgment as to the FMLA claim.

**V.      Conclusion**

For the reasons stated herein, the defendants' motions for summary judgment [129-1] and 131-1] are granted and the plaintiff's motion for leave to file a sur-reply [154-1] is denied.  The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


**ENTER**:


**Date**: July 26, 2010

_Blanche M. Manning_

_____
**Blanche M. Manning**
**United States District Judge**